**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marilyn Adams, et al., | No. CV-09-1529-PHX-FJM |
| Plaintiffs, | **ORDER** |
| vs. | |
| Matrixx Initiatives, Inc., et al., | |
| Defendants. | |

The court has before it plaintiffs' motion to remand (doc. 11) and defendants' response (doc. 15). Plaintiffs did not file a reply.

I.

On June 22, 2009, 117 plaintiffs filed a Complaint in the Superior Court of Arizona in Maricopa County against Matrixx Initiatives, Inc., Zicam, LLC, and Botanical Laboratories, Inc. (collectively, "defendants"), asserting claims of strict products liability, negligence, fraud, breach of warranties, and consumer fraud, arising out of defendants' marketing and sale of its Zicam brand of products. Plaintiffs contend that defendants are liable for designing, manufacturing, and distributing a defective nasal spray called Zicam Cold Remedy Nasal Gel Spray, and for failing to warn of the possibility of permanent loss of smell.

On July 23, 2009, defendants removed the action to this court asserting subject matter jurisdiction under 28 U.S.C. § 1332(d) as a mass action under the Class Action Fairness Act ("CAFA"). The CAFA defines "mass action" as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact." 28 U.S.C. § 1332(d)(11)(B)(i). The CAFA provides that a qualifying mass action "shall be deemed to be a class action" removable to federal court under the Act, so long as the rest of the CAFA's jurisdictional requirements are met. 28 U.S.C. § 1332(d)(11)(A). For example, the aggregate amount in controversy must exceed $5,000,000, and at least one plaintiff must be a citizen of a state different from that of any defendant. Id. § 1332(d)(2). The CAFA further limits federal removal jurisdiction in a "mass action" to "those plaintiffs whose claims . . . satisfy the [$75,000] jurisdictional amount requirements" for federal diversity jurisdiction. Id. § 1332(d)(11)(B)(i).

## II.

When the present complaint was filed in state court, the action involved 117 plaintiffs. On July 13, 2009, defendants filed their answer by United States mail. One day later, on July 14, 2009, plaintiffs filed a notice voluntarily dismissing the claims of 32 plaintiffs. Plaintiffs now contend that, because of the voluntary dismissals, only 85 plaintiffs remain—less than the 100 plaintiffs required to support jurisdiction as a "mass action" under the CAFA.

Under Rule 41(a)(1)(A), Ariz. R. Civ. P., a plaintiff may voluntarily dismiss an action without court order "at any time before service by the adverse party of an answer." After an opposing party has served an answer to the complaint, however, a plaintiff must obtain an "order of the court pursuant to a stipulation of dismissal signed by all parties who have appeared in the action." Ariz. R. Civ. P. 41(a)(1)(B). A "paper is served . . . by mailing it via U.S. mail to the person's last known address–in which event service is complete upon mailing." Id. at 5(c)(2)(C).

Defendants Matrixx and Zicam served their answer to the complaint by mail on July 13, 2009. Because plaintiffs' voluntary dismissal of 32 plaintiffs was filed on July 14, 2009,

after the answer was served, an order of the court was required to effectuate the dismissals. Without a court order, the voluntary dismissals are without effect, and 117 plaintiffs presently remain in this action. The attempted dismissals do not defeat removal under the CAFA.

### III.

Plaintiffs also contend that defendants have failed to adequately allege citizenship to establish diversity jurisdiction. Under the CAFA, minimum diversity exists when any plaintiff "is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). In moving to remand, plaintiffs do not contend that diversity jurisdiction does not exist. Instead they contend that defendants have failed to satisfy their burden of proof by relying on plaintiffs' residency averments in the complaint.

Allegations of residency in a state court complaint can create a rebuttable presumption of domicile supporting diversity of citizenship. State Farm Mut. Auto Ins. Co. v. Dyer, 19 F.3d 514, 519 (10th Cir. 1994) (citing Lew v. Moss, 797 F.2d 747, 751 (9th Cir. 1986)). Once the presumption arises, the burden of production shifts to the party challenging diversity to produce some contrary evidence to undermine the presumption. Lew, 797 F.2d at 751.

Plaintiffs have failed to come forward with any evidence to undermine the presumption. (In fact they do not respond to the argument at all). Plaintiffs' complaint avers that 117 plaintiffs are residents of more than 30 different states. Defendants must show that any one of these plaintiffs is a citizen of a state different from any of the three defendants. In light of plaintiffs' allegations of residency, coupled with plaintiffs' failure to produce any evidence to undermine the presumption created by those allegations, we conclude that defendants have sufficiently carried their burden of proving minimum diversity under the CAFA.

### IV.

Finally, plaintiffs argue that defendants failed to establish the amount in controversy requirements of the CAFA. In order to establish subject matter jurisdiction over mass

actions, the removing party must show by a preponderance of the evidence that plaintiffs' aggregate amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2). The statute further provides that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy [the $75,000 amount in controversy requirement under section 1332(a)]."

Citing <u>Abrego Abrego v. Dow Chem. Co.</u>, 443 F.3d 676 (9th Cir. 2006), the defendants argue that the Ninth Circuit has interpreted § 1332(d)(11)(A) as requiring that the removing party prove that "at least one plaintiff" meets the $75,000 amount in controversy requirement. <u>Response</u> at 7. This is not a fair representation of <u>Abrego</u>. The <u>Abrego</u> court remanded the action to state court concluding that the defendant failed to demonstrate that even one plaintiff met the $75,000 jurisdictional requirement. <u>Abrego</u>, 443 F.3d at 689. The court expressly left open the "thorny" question of whether the statute requires that all 100 plaintiffs individually satisfy the $75,000 requirement. <u>Id.</u> at 682. We also need not reach this question because we conclude that defendants have demonstrated by a preponderance of the evidence that each plaintiff seeks an amount in excess of the $75,000 minimum.

Plaintiffs seek an unspecified amount of damages in their complaint for permanent loss of smell and taste, loss of enjoyment of life, anxiety, inconvenience, emotional distress, past and future medical expenses, past and future lost wages, diminished earning capacity, and punitive damages. <u>See</u> <u>Bell v. Preferred Life Assur. Soc.</u>, 320 U.S. 238, 240, 64 S. Ct. 5, 6 (1943) (holding that a claim for punitive damages is properly included in the amount in controversy calculation). Although plaintiffs do not specify the amount of damages sought, our inquiry is not confined to the face of the complaint. We may also consider facts presented in the removal petition and "summary-judgment-type evidence relevant to the amount in controversy." <u>Valdez v. Allstate Ins. Co.</u>, 372 F.3d 1115, 1117 (9th Cir. 2004). For example, a settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim. <u>Cohn v. Petsmart, Inc.</u>, 281 F.3d 837, 840 (9th Cir. 2002).

Here, evidence outside the complaint demonstrates that plaintiffs seek damages in excess of the jurisdictional amount. Prior to filing this action, 114 plaintiffs made a

1  settlement demand of $250,000 each, more than three times the jurisdictional amount.
2  Hayden Decl., exhibit A. This is relevant evidence of plaintiffs' assessment of the value of
3  their case. See Burns v. Windsor Ins. Co., 31 F.3d 1092, 1094 (11th Cir. 1994) ("great
4  weight" should be given to the plaintiff's assessment of the value of his case).

5  Plaintiffs now suggest that their settlement demand was unrealistic because previous
6  settlements agreements in similar cases produced payments to plaintiffs in amounts far less
7  than the jurisdictional minimum. However, settlement agreements necessarily reflect a
8  reduction in a plaintiff's recovery due to the possibility of a defense verdict. In contrast,
9  when measuring the amount in controversy for jurisdictional purposes, we must assume that
10 the allegations in the complaint are true and that the jury will return a verdict in plaintiff's
11 favor. "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's
12 complaint, not what a defendant will *actually* owe." Korn v. Polo Ralph Lauren Corp., 536
13 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008).

14 Based on the allegations of significant injuries suffered by plaintiffs, and on the
15 plaintiffs' settlement demands well in excess of the jurisdictional minimum, we conclude that
16 defendants have met their burden of establishing that the amount in controversy satisfies both
17 the individual $75,000 amount in controversy, as well as the aggregate $5,000,000 required
18 by the CAFA. We conclude that we have subject matter jurisdiction over this mass action
19 pursuant to the CAFA.

20 **IT IS ORDERED DENYING** plaintiffs' motion to remand (doc. 11).
21 DATED this 24th day of September, 2009.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge